IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE PLANING MILL, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-1051-WEB |
| | ) | |
| HAYS PLANING MILL, INC., | ) | |
| and DENNIS BRAUN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>Memorandum and Order</u>**

This matter came before the court on May 26, 2005, for a hearing on the plaintiff's motion for a preliminary injunction. At the conclusion of the evidence, the court orally denied the motion. This written memorandum will supplement the court's oral ruling.

I. *Background*.

There has been an operating planing mill in Hays, Kansas, since 1896. The mill has been owned and operated by various individuals and companies over the years, but it has always included the term "Planing Mill" in its name and has always been located at 1013 Elm Street in Hays. In 1975, the business was converted to a corporation by its then-owner under the name of "Hays Planing Mill, Inc." According to the defendants, the mill began using the mark "HAYS PLANING MILL, INC." as early as 1975 to designate the source of its goods, and also used a corporate seal containing the phrase, "since 1896." Defendant Dennis Braun and his wife, Yvonne, purchased the corporate entity (Hays Planing Mill, Inc.) and all the assets of the company in 1993, with each of them owning 50% of the outstanding corporate

stock.  Braun thereafter operated the business on Elm street as "Hays Planing Mill" and continued to

manufacture millwork and cabinetry.  He continued to use the corporate seal stating that the business had

been in operation "since 1896"; in fact, there was a sign to that effect on the building.

In the fall of 2000, negotiations took place between Dennis Braun, David Wasinger (an employee

of the mill), and Chuck Comeau (President of a furniture manufacturing company known as Dessin/Fournir,

Inc.), concerning the formation of a new entity -- a limited liability company.  On December 4, 2000, these

three members agreed to the formation of the entity, "The Planing Mill, LLC," and adopted an Operating

Agreement to govern the rights and duties of the Members.  The stated purpose of the LLC was to engage

in the furniture manufacturing and finishing business and any other lawful business.  According to the

Agreement, the LLC would commence upon filing of Articles of Organization and would continue for 30

years unless sooner terminated by the members or by operation of law.  The initial capital contribution of

the members was $1,000 for Dessin/Fournir and $500 each for Braun and Wasinger; with Dessin-Fournir

having a 50% ownership interest and 25% each for Braun and Wasinger.  The Agreement provided that

Dessin/Fournir would perform the administrative functions of the business and Braun and Wasinger would

manufacture furniture and cabinetry.  The Agreement stated that the parties would be paid for their services

by the Company at rates to be agreed upon, and that any equipment or real estate owned by individual

members and used by the Company would be leased by the Company on terms to be agreed upon.

Paragraph 3.7 of the Operating Agreement, entitled "Exclusivity," provided as follows:

3.7  Exclusivity.  Braun is an owner and controlling shareholder of Hays Planing Mill, Inc., which
currently conducts a business which would be in direct competition with the Company.  Hays Planing Mill,
Inc. shall cease doing any business which now or in the future may compete with the business of the
Company.  Braun and Wasinger agree that they will direct all orders for wood planing, woodworking,
cabinet making and furniture manufacturing to the Company from and after the date of this Operating

Agreement and shall cease all such activity outside of the Company's operations for as long as the Company exists or as long as Braun and/or Wasinger are Members of the Company, whichever is shortest in duration; provided, however, that Braun may allow Hays Planing Mill, Inc. to complete orders currently in process. Said current orders are listed on Schedule 3.7 hereto. It is understood that Dessin and/or its affiliates is currently engaged in and will continue to be engaged in the furniture and accessory manufacturing and sales business. Dessin's businesses are and will continue to be in competition with the business of the Company and nothing contained in this Operating Agreement or otherwise shall in any way prevent Dessin from continuing and/or expanding its business outside of the Company.

The Operating Agreement also set forth the parties' rights and obligations relating to profits and losses, management of the Company, transfer and sale of memberships, and dissolution of the Company. The Agreement allowed members to transfer their interest or to withdraw from the LLC under certain conditions. In the event of a withdrawal by one member, the remaining members had the option of purchasing that member's interest.

The initial draft of the Operating Agreement was drawn up by attorneys for Chuck Comeau. In the course of the negotiations between the parties, Braun and Wasinger consulted with an attorney of their own and made certain changes that were agreed upon by all parties in the final Agreement.

Dennis and Yvonne Braun owned the property and building at 1013 Elm in Hays out of which the Hays Planing Mill had operated, and the Brauns' corporation (Hays Planing Mill Inc.) owned all of the tools and equipment. The Operating Agreement setting up The Planing Mill, LLC did not provide for the purchase or transfer of ownership of these assets. Charles Comeau testified that Braun did not want to sell the building and the equipment. A lease agreement was entered into in December of 2000 between Hays Planing Mill, Inc. and Dennis and Yvonne Braun (as landlord), and The Planing Mill, LLC (as tenant), providing for a three-year lease of the property, building, and equipment at 1013 Elm to the LLC. All of the employees of Hays Planing Mill, Inc. (the record does not disclose how many) were hired by The

Planing Mill, LLC.

The Planing Mill thereafter began operations and continued much as Hays Planing Mill had before, although there was apparently some shift in emphasis toward furniture manufacturing. The company retained the name of "Hays Planing Mill" in the phone book because people were familiar with that name, and both names ("Hays Planing Mill" and "The Planing Mill") were used with customers and clients. The company also used the phrase "since 1896" as a service mark. Dennis Braun was aware of the use of these marks and never raised any objection.

At some point, Chuck Comeau became aware that Braun had used LLC assets to perform some mill work for a job outside of the LLC, contrary to Braun's obligations under the Operating Agreement. When Comeau confronted him about it, Braun agreed to pay back to the LLC the money he had received for the job.

Comeau testified that the company's working relationship with Braun came under stress and it was clear that Braun was not happy at the LLC. In July of 2002, Comeau and Braun entered into a Purchase Agreement under which Dessin/Fournir, Inc. agreed to buy out Braun's 25% interest in the LLC. Braun assigned his membership rights to Dessin in exchange for a payment of $13,781.99. David Wasinger consented to the purchase. The Purchase Agreement provided that nothing therein was intended to affect the terms or ability to enforce the prior LLC Operating Agreement. It also contained an acknowledgment by Braun that the 3-year lease of the building and equipment at 1013 Elm would continue in accordance with its terms. The LLC continued to operate out of the location at 1013 Elm after the buy-out of Braun's interest.

On December 30, 2003, the date the lease agreement for 1013 Elm was to expire, the parties

executed an addendum to the lease effectively extending it for one year.  The addendum provided that the lease would extend until December 31, 2004, and would then automatically terminate.  It was signed by Dennis Braun, both in his personal capacity and as President of Hays Planing Mill, Inc., by Yvonne Braun in her personal capacity, and by Chuck Comeau as President of Dessin/Fournir, Inc. and managing member of the LLC.

In 2003, after Dessin bought out Braun's interest, Braun worked for another company (or companies) in Hays, and also did some custom cabinetry on the side.  He did not use the "Hays Planing Mill" name.

When the lease for 1013 Elm expired at the end of 2004, the LLC moved to another location.  The LLC bought a historic building in downtown Hays and spent approximately $350,000 to refurbish it.  Mr. Comeau testified that the historic building was important to the image of the company.  Together with the use of the service mark "since 1896," the building was intended to convey to customers the credibility and stability of the business.  In its promotions, advertising and public relations, the LLC emphasized that the business was a continuation of the historic Hays Planing Mill.

In January of 2005, Dennis Braun resumed possession of the building and equipment at 1013 Elm, and he resumed doing milling work and making cabinetry under the trade name of Hays Planing Mill, Inc.

Each of the principals in the LLC testified at the preliminary injunction hearing.  Chuck Comeau testified that in his negotiations with Braun there was never any talk about the LLC being a temporary arrangement.  Comeau said he understood that Hays Planing Mill was to wind down and the LLC was to be a continuation or evolution of the same entity.  He said the name "The Planing Mill" was chosen in part because that was how people referred to the historic business in Hays.  He felt "The Planing Mill" name

was a better national brand than "Hays Planing Mill," given that a fair amount of the LLC's business was to involve sales of furniture on a national-wide level from New York to California.  If he had known Braun was of the view that the cessation of Hays Planing Mill was only temporary, he never would have entered the transaction.  He said his understanding was that the trademarks "Hays Planing Mill" and "since 1896" were transferred to the LLC as part of the formation of the LLC, as evidenced by the Operating Agreement's proviso that "Hays Planing Mill, Inc. shall cease doing any business which now or in the future may compete with the business of the Company."  He said he did not get a specific assignment of these marks because the whole purpose of the venture was to reincarnate the Hays Planing Mill.  Comeau said Braun's use of the Hays Planing Mill name has caused confusion -- including some misdirected mail and phone calls.

Dave Wasinger testified that he understood the LLC to be a long-term venture, and that Braun never said anything to him about possibly resurrecting the Hays Planing Mill in the future.  He testified that in the period when they were negotiating with Comeau, Braun had a discussion with an accountant about liquidating the Hays Planing Mill, Inc., although Braun never in fact liquidated the corporation.  Wasinger testified that he was aware of some confusion caused by Braun's resumption of business under the Hays Planing Mill name, including confusion among some vendors.  He said the LLC sometimes gets orders or bills intended for Braun's business.

Dennis Braun testified that he had no intention of permanently shutting down Hays Planing Mill.  He said his understanding of the Operating Agreement was if the LLC did not work out, he could go back to operating Hays Planing Mill, Inc.  Although he conceded he never told Comeau or Wasinger about any such intention, he said nothing in the written agreements prevented him from doing so.  He noted that under

6

the agreements he or the others could get out of the LLC at any time, and he said that if the others had

withdrawn he would have gone back to operating the Hays Planing Mill.  Although he did not use the trade

name "Hays Planing Mill" from 2000-04, he said he never intended to abandon the name or the business,

and that he continued to pay taxes for the corporation and maintained a corporate bank account.  He said

he did not use the name "Hays Planing Mill" initially after he left the LLC because at that point he had no

facility to conduct milling.  Braun agreed that there has been some confusion following his resumption of

Hays Planing Mill and that the mail mix-up has been a problem.  He said he believed the problem was due

to the fact that the LLC was using the names "The Planing Mill" and "The Hays Planing Mill."

II.  *Summary of the Action*.

Plaintiff The Planing Mill, LLC ("the LLC" or "TPM")-- filed a verified complaint on February 22,

2005, against Hays Planing Mill, Inc. and Dennis Braun.  The Complaint alleges that after the buyout of

Braun's interest in the LLC, Braun "continued to unfairly compete against TPM, claiming rights to the seal

and the use of the name 'The Hays Planing Mill,' issuing press releases and soliciting the customers and

prospective customers of TPM...."  Complaint, ¶ 5.  Plaintiff alleges that when TPM's lease expired at the

end of 2004, Braun re-occupied the premises, forcing TPM to relocate away from the historic location of

the mill, and that "Braun then commenced to unfairly compete against TPM, using this historic location for

the operations of THPM [The Hays Planing Mill]."  Plaintiff alleges that it sells goods throughout the U.S.

and the world, and that the similarity of the names and the businesses of the two companies has "sown

confusion in the marketplace, diluted the trademark of TPM, constitutes unfair competition, and is in

violation of the law."  The Complaint contains three counts.  Count I alleges a violation of the Lanham Act.

It asserts that "The Planing Mill" is a distinctive mark and trade name long associated by residents of Hays

with the millwork business located on Elm Street.  Plaintiff says it is the legal and equitable owner of the trade name "The Planing Mill" by virtue of the formation of the new LLC in December of 2000.  It further claims it is the owner of the former corporate seal as well [which states "quality construction since 1896") because Braun discontinued his use of the seal in December 2000 and consented to its use as part of the trade dress and service mark of the LLC.   Plaintiff claims that pursuant to 15 U.S.C. § 1125(a), the defendant has wrongfully infringed on plaintiff's marks, trade names, trade dress, and service marks.  It alleges that defendant's actions have caused, and are likely to cause, consumer confusion as to the source of the parties' goods.  Plaintiff seeks injunctive relief, attorney's fees, its costs of action, and other relief, including statutory damages.  Count II of the complaint alleges a claim for unfair competition in violation of state and federal common law.  It claims that plaintiff's marks and trade dress have acquired a secondary meaning through extensive use and are protected at common law, and that the defendant has intentionally sought to create a colorable imitation of plaintiff's mark in order to deceive the public and confuse people into mistaking defendant's mark for that of plaintiff's.  It further claims defendant has intentionally interfered with plaintiff's existing contractual relations.  Count III of the complaint seeks injunctive relief.  It alleges that plaintiff has no adequate remedy at law and will suffer immediate and irreversible harm from defendant's continued infringement.  Plaintiff claims it is entitled to an injunction to prevent the further infringement and use of its marks, trade name and trade dress and service marks; to prevent defendant from using the name "Hays Planing Mill"; and to prevent defendant from wrongfully interfering with plaintiff's customers and prospective customers by unfair and deceptive competition.

The defendants' answer denies that plaintiff is entitled to any relief.  Defendants have asserted counter claims seeking a declaratory judgment that they are not infringing any trademark rights of plaintiff

8

and have not engaged in unfair competition.  Additionally, defendants claim that plaintiff has engaged in false advertising and unfair competition by falsely representing that it is the successor-in-interest to defendant Hays Planing Mill and by using a misleading representation that it has been producing millwork "since 1986."

III.   _Standard for Preliminary Injunction_.

In its motion for preliminary injunction, plaintiff seeks an order directing the defendants to refrain from using the name "The Hays Planing Mill" and its associated marks and seals.  Under Fed.R.Civ.P. 65, a preliminary injunction is designed to preserve the relative positions of the parties until a trial on the merits can be held.  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  It is an equitable remedy within the sound discretion of the district court.  *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).

A party seeking a preliminary injunction has the burden of establishing:   (1)    a substantial likelihood of success on the merits of the case;  (2) irreparable injury to the movant if the preliminary injunction is denied;  (3)  the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and   (4)  the injunction is not adverse to the public interest.   *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).  Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal.  *Id.*

1. Likelihood of success on the merits.

Generally speaking, a successful trademark infringement claim under the Lanham Act requires a showing (1) that the plaintiff holds a protectable mark, and (2) that the defendant's use of an identical or similar mark is likely to cause confusion among consumers.  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004).  Statutory and/or common law protection against service mark or trade dress

infringement is available even if the mark or trade dress has not been federally registered.  *Id*.

Plaintiff contends it acquired the right to use the trade name "Hays Planing Mill" and the seal or mark stating "since 1896" as part of the Operating Agreement setting up the LLC.  Pl. Br. at 6.  There is no dispute under the evidence that as between the parties, Mr. Braun was the first user of these trade marks and that they initially belonged to Braun's corporation (Hays Planing Mill, Inc.) by virtue of Braun's purchase of the planing mill business and its assets from Willie Pfiefer.  The evidence now before the court, including the parties' agreements relating to formation of the LLC, discloses no specific agreement for the sale or assignment of these assets from Hays Planing Mill, Inc. to the LLC.  Specifically, the Operating Agreement says nothing about transferring the trade name "Hays Planing Mill" or the corporate seal, and the evidence presented raises serious doubts as to whether there was any "meeting of the minds" to transfer such assets to the LLC.  Plaintiff contends there was an assignment of the marks under paragraph 3.7 of the LLC Operating Agreement, which stated in part that "Hays Planing Mill, Inc., shall cease doing any business which now or in the future may compete with the business of the Company."   Nothing in this language, however, purports to transfer any assets from Braun's corporation to the LLC.  On its face, it is only a covenant not to compete with the LLC.  And when read with the other provisions in the same paragraph, it could reasonably be construed as restricting such competition only for as long as Dennis Braun was a member of the LLC.  *Cf. Operating Agreement*, ¶ 3.7 ("Braun ... shall cease all such activity outside of the Company's operations for as long as the Company exists or as long as Braun ... [is a] Member[] of the Company, whichever is shortest in duration;...").  *See Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 822 P.2d 64 (1991) (The meaning of a contract should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated

10

provision.).  According to the testimony of both Braun and Comeau, the parties never specifically discussed the transfer of any of the corporation's trademarks to the LLC during their negotiations about forming the LLC.  Nor is there any provision indicating the LLC was purchasing the goodwill or other assets (except inventory) of the corporation from the Brauns.  Plaintiff has failed to present persuasive evidence that the parties had a mutual understanding that this transaction was a sale of the Hays Planing Mill, Inc. and/or its assets to the LLC.  Braun testified that he was never asked to transfer, sell or assign the trademarks to the LLC, and that he never intended to do so.  At a minimum this evidence raises substantial doubts about whether the parties intended to affect a transfer of Braun's corporate trademarks to the LLC.  Under the evidence presented, the court cannot say that plaintiff has demonstrated a substantial likelihood of success on its claim that Braun transferred the trademarks to the LLC.

Plaintiff also contends it acquired these trademarks by virtue of Mr. Braun's alleged acquiescence and assisting in the LLC's use of the marks.  This argument appears to be premised on the doctrines of abandonment, acquiescence and/or laches.  But evidence that Braun permitted the LLC to use these marks while he was a member does not establish that he had an intent to abandon his right to use the marks. Abandonment under the Lanham Act requires proof that the owner of the mark ceased to use it with an intent not to resume such use.  Nonuse for three consecutive years is considered prima facie evidence of abandonment under the Lanham Act.  *See* 15 U.S.C. § 1127.  *See also Silverman v. CBS, Inc.*, 870 F.2d 40, 45 (2nd Cir. 1989) (abandonment requires non-use by the legal owner and no intent by the owner to resume use in the reasonably foreseeable future).  Braun testified that his intent all along was to resume use of the Hays Planing Mill business if he or the other members decided to leave the LLC.  Plaintiff cites nothing in the parties' written agreements or in any oral statements by Braun that evince an intent to

11

permanently abandon these marks.  A reasonable finder of fact could conclude that Braun's consent to let the LLC use the marks did not constitute an abandonment.  Under the circumstances, the court cannot find that the evidence warrants a preliminary injunction under a theory of abandonment.  As for Mr. Braun's consent to let the LLC use the marks, the fact of consent would justify the LLC's use of the marks during the period of consent, but such a right would ordinarily cease once consent was revoked.  *See Restatement (Third) of Unfair Competition*, § 29 (1995), *comment d* (right to use trademark pursuant to consent ends when the consent is terminated).  Plaintiff seems to argue that it relied to its detriment on Braun's consent and that principles of equity should therefore estop Braun from revoking that consent.  But the evidence presented shows there are a number of disputed facts that make a preliminary injunction inappropriate.  First among these is the issue of whether the parties had a mutual understanding or agreement concerning the use of the these trademarks.  Moreover, insofar as any argument concerning laches or estoppel is concerned, there is evidence from which a reasonable jury could find that plaintiff had reason to know (based on the structure of the Operating Agreement) that Braun's consent was in the nature of a temporary licensing agreement for as long as he was a member of the LLC, rather than a permanent or open-ended agreement to allow permanent use of the marks by the LLC.  *Cf. Restatement (Third) of Unfair Competition*, § 33 (owner may license another to use the mark; a licensee may use the mark within the scope of the license granted).

All of the foregoing leads the court to conclude plaintiff has failed to show a substantial likelihood of success on its claim to ownership of the "Hays Planing Mill" and "since 1896" marks.[1]

---

[1] The court notes there are other potential problems with plaintiff's claim.  The court has some doubt as to whether the "Hays Planing Mill" and/or "The Planing Mill" marks are more appropriately

2. *Irreparable Injury*.

Plaintiff has likewise failed to make a significant showing of irreparable injury. As defendant pointed out, plaintiff did not seek immediate injunctive relief in this case, and it has now been almost four months since the complaint was filed. Moreover, there has been no showing that plaintiff will suffer irreparable harm between now and the time this matter can be brought to trial.

3. *Threatened Harm to Movant and Non-Movant*.

As noted above, there is an absence of concrete evidence that plaintiff will suffer an immediate and irreparable injury if a preliminary injunction is not granted. Defendant, on the other hand, would suffer some palpable economic injury from having to alter its trade name and trade marks during the pendency of this action. As noted previously, the function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties. *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 260 (10th Cir. 1981). A preliminary injunction that alters the status quo "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). On balance, this factor weighs against the granting of a preliminary injunction.

---

characterized as generic (and therefore incapable of trademark protection) or merely descriptive (capable of protection only upon a showing of secondary meaning). *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004). Defendant has cited evidence that the use of "planing mill" in trade names is common for businesses engaged in woodworking, and the term itself is defined in the dictionary as "a wood working establishment in which wood is smoothed, cut, matched, and fitted." *See Webster's Third New Int'l. Dictionary*. *Cf. U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 525 (4th Cir. 2002) (mark entitled to little or no protection because the term "search" was a common descriptive term used by recruiting businesses).

4. *Public Interest*.

The court concludes that the public interest does not weigh in favor of a preliminary injunction. Plaintiff has failed to make a substantial preliminary showing of likelihood of success on the merits.  Until the merits of these claims are determined, the court cannot say that the public interest would be served by an injunction preventing the defendant from using the disputed trade marks.  Defendants undoubtedly owned these marks prior to the formation of the LLC, and it will be up to the plaintiff at trial to prove that such marks were either transferred to the LLC or that it acquired a superior right to use them by virtue of the parties' course of dealings.  Unless and until such a showing is made, the court concludes that the injunctive relief sought would be inappropriate.

IV. *Conclusion*.

In sum, consideration of all the relevant factors does not persuade the court that plaintiff is entitled to the extraordinary remedy of a preliminary injunction.  Plaintiff's Motion for Preliminary Injunction (Doc. 7) is therefore DENIED.

The court further directs that the referral of this matter to the Magistrate Judge for pretrial proceedings be withdrawn, and that all pretrial proceedings will be conducted by the undersigned judge.

IT IS SO ORDERED this __2ⁿᵈ__ Day of June, 2005, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

14